IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-cr-20115-JAR-TJJ-01 |
| | ) | |
| BRENT BROWN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on the Emergency Motion for Immediate Release filed by Defendant Brent Brown (ECF No. 182).[1] On February 4, 2020, the undersigned Magistrate Judge ordered Defendant detained pending hearing on the Petition to Revoke Supervised Release (ECF No. 169). Defendant now seeks temporary release pursuant to 18 U.S.C. § 3142(i) because of his health and concerns that he faces a serious risk from the COVID-19 pandemic if he remains in custody. Plaintiff United States of America filed a timely Response opposing the Motion (ECF No. 185). The Court has considered the Motion and Memorandum in Support and Plaintiff's Response and, for the reasons discussed below, denies Defendant's request for immediate release.

### Procedural and Factual Background

The Defendant pled guilty to possession with intent to distribute more than 50 grams of cocaine base, a Class A felony (ECF Nos. 56, 58, and 59), and was sentenced to 156 months

---

[1] Although Defendant's Motion is styled as a request simply for "immediate release," the Motion is expressly limited to a request for "temporary" release (ECF No. 182 at 6).

imprisonment and 60 months supervised release on October 27, 2009 (ECF Nos. 84 and 85).[2] His term of imprisonment was later reduced to 120 months and he was released from custody on or about July 10, 2018.[3]

On January 21, 2010, District Judge Murguia approved a Petition for Warrant or Summons for Offender Under Supervision (ECF No. 169), recommending that Defendant's supervised release be revoked. At the same time, Judge Murguia ordered the issuance of a warrant for Defendant's arrest. The Petition and subsequent Violation Report (ECF No. 174) alleged that Defendant violated the conditions of his supervised release that he not commit another federal, state, or local crime, and prohibiting him from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon.

The Defendant was arrested on January 31, 2020. The undersigned Magistrate Judge conducted a detention hearing on February 4, 2020. After hearing testimony from the U. S. Probation Officer assigned to the case and arguments of counsel, the Court found Defendant presented both a serious risk that he would not appear (a flight risk), and that he would endanger the safety of another person or the community if released, and that no condition or combination of conditions would overcome those risks. The Court ordered Defendant detained pending his final revocation hearing (ECF 176). He is currently detained at the Leavenworth Detention Center (LDC) operated by CoreCivic in Leavenworth, Kansas.

The crux of Defendant's argument in support of immediate release is that he "faces the grim threat of coronavirus within CoreCivic's walls." (ECF No. 182 at 1). Defendant cites the

---

[2] Given the "emergency" motion and the nature and circumstances surrounding it, the Court is intent upon issuing this Memorandum and Order as expeditiously as possible and, therefore, will not include here a detailed summary of the procedural history in this case.

[3] Defendant's term of imprisonment was reduced by court order on July 6, 2018 (ECF No. 137). The record is not clear as to precisely when he was released from custody but in its Response, Plaintiff asserts that Defendant's supervised release began on July 10, 2018 (ECF No. 185 at 2).

number of persons infected worldwide and in the United States with the new strain of coronavirus that causes COVID-19, as well as the number of deaths resulting from the virus worldwide and in the United States. *Id.* He also notes that the World Health Organization has officially classified COVID-19 as a pandemic, the Governor of Kansas has declared a State of Emergency in Kansas, the President has advised avoiding social gatherings of more than ten people, and COVID-19 is a novel virus with no known cure and no one is immune from the virus. (*Id.* at 2).

With regard to the COVID-19 pandemic:

The Court takes judicial notice of the present national (and world-wide) emergency. There is little point in a detailed snapshot of the status of the constantly-developing emergency. There are an increasing number of COVID-19 cases and deaths from the illness in every State, including Kansas. Much of the nation is under voluntary or mandatory "stay-at-home" orders which require or encourage minimal contact between citizens in an effort to slow the spread of the virus. Restaurants, schools, universities, hotels, bars, many retail establishments and business have closed. The Chief Judge of the District of Kansas has issued emergency orders suspending most in-person non-emergency criminal hearings including jury trials. (Orders 2020-2 and 2020-3). The President has extended federal guidance recommending 'social distancing.'[4]

The Defendant cites an April 2017 audit report of the U.S. Marshals Service contract to operate CoreCivic as evidence of problems at the LDC that might make it susceptible to spread of COVID-19. He complains that CoreCivic has taken only limited steps to reduce the risk of introduction and transmission of COVID-19 to the staff and detainees, and notes reports that CoreCivic has failed to provide products or take precautions to combat the virus. He alleges that because the LDC is a "congregate environment," infectious diseases transmitted via air or touch are more likely to spread. Defendant also notes he is unable to maintain a six-foot distance from

---

[4] The quoted language is from a recent summary of the current state of the COVID-19 pandemic by Magistrate Judge Kenneth G. Gale in *United States v. Kevin Lewis*, Case No. 20-10028, ECF No. 197 at 2 (D. Kan. Mar. 30, 2020).

others, so there is an increased risk the disease will spread exponentially in the LDC. Plaintiff disputes these accounts and notes instead that the LDC has taken appropriate steps to combat the spread of COVID-19.

As for his own physical condition, Defendant claims he "will be particularly vulnerable 'when and not if' COVID-19 comes to the LDC." The Defendant was the victim of a shooting in November 2019, during which he was shot multiple times. Defendant claims he suffered atelectasis (complete or partial collapse of his right lung), his spleen was removed (which filters blood as part of a person's immune system), he suffered pneumothorax (collapse of his left lung), and he either had pneumonia or had symptoms consistent with pneumonia. Defendant claims he is a vulnerable person based on both his weakened immune system and the damage to his lungs.

## Analysis[5]

Defendant moves for immediate temporary release pursuant to 18 U.S.C. § 3142(i), a provision of the Bail Reform Act, which provides in relevant part:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason*.

---

[5] Pursuant to Administrative Order No. 2020-3, all nonemergency criminal hearings are postponed pending further order of the court. Because of the time-sensitive nature of the relief requested and in accordance with Administrative Order No. 2020-3, the Court rules without holding a hearing on the motion. *See, e.g.*, *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (recognizing the Bail Reform Act is silent about whether the defendant is entitled to an in-court hearing after a detention order has issued and declining to grant one in an "endeavor to comply with the federal and State recommendations about avoiding bringing people together in groups larger than ten persons, as well as rule expeditiously").

18 U.S.C. § 3142(i) (emphasis added).[6] Section 3142(i) permits the Court to grant temporary release of a defendant to the extent "necessary for preparation of the person's defense or for another compelling reason." The defendant bears the burden of proof under §3142(i). *United States v. Clark,* No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020), citing *United States v. Buswell,* No.11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases)).

Most courts that have addressed motions for temporary release under § 3142(i) have done so based upon the first prong—whether release is necessary for the defendant to assist with preparation of his or her defense. *Id.* (citations omitted). While this could be a consideration in some cases in the context of the current COVID-19 pandemic, it does not appear relevant in this case involving Defendant's post-conviction detention. There is no pending trial for Defendant to assist his counsel in preparing, and any need to assist counsel in preparing for the final revocation hearing in this case seems minimal. Defendant's counsel makes no argument to the contrary.

There is limited authority regarding when temporary release is justified under §3142(i) based upon the second prong - "another compelling reason" - although a defendant's medical condition may present the compelling reason in a particular case. *Clark* at 4, *citing United States v. Rebollo-Andino*, 312 Fed. App'x 346, 348 (1st Cir. 2009) (defendant could seek temporary release under § 3142(i) for medical reasons). However, "[c]ourts have typically granted relief

[6] The Court notes preliminarily that, as the heading to 18 U.S.C. § 3142 expressly states, it governs only "Release or detention of a defendant *pending trial*." In contrast, Defendant's motion arises post-conviction, while he is detained pending hearing on a petition for revocation of his supervised release. On its face, then, §3142 does not appear to be applicable. Yet, Defendant cites no other authority for his request for immediate release, nor does Plaintiff raise this issue in its response. Rather than deny the motion on this basis, the Court finds it appropriate to apply the §3142(i) standard to the request for temporary release in this case, under the extraordinary circumstances surrounding the current COVID-19 pandemic and given the similarities between the emergency motion for immediate release in this case and other such motions in cases from this District arising in the pretrial detention context.

under § 3142(i) only 'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'" *Clark*, at 4, quoting *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y Mar. 20, 2020) (summarizing cases)). Brown seeks temporary release based on COVID-19 concerns under this "necessary . . . for another compelling reason prong of § 3142(i).

The Court turns now to the analysis of Defendant's request for temporary release under § 3142(i). Magistrate Judge Angel D. Mitchell addressed this issue recently in *Clark*. As in this case, in *Clark* the defendant cited § 3142(i), the defendant's health concerns and the COVID-19 pandemic as his bases for requesting immediate release. In her well-reasoned opinion, Judge Mitchell considered four factors to determine whether the defendant met his burden to show a "compelling reason" for immediate release pursuant § 3142(i): (1) the original grounds for the defendant's pretrial detention; (2) the specificity of the defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. *Clark*, supra at *4. This Court adopts Judge Mitchell's four-factor analysis.

### A. Original grounds for detention

The Petition seeking revocation of Brown's supervised release alleges that Brown violated the conditions of his supervised release that he not commit another federal, state, or local crime, and prohibiting him from possessing or purchasing a firearm, ammunition, destructive device, or any other dangerous weapon. The Petition and the U.S. Probation Officer's testimony at the detention hearing provide the following facts gleaned from the police report associated with Brown's January 31, 2020 arrest. When law enforcement attempted to stop

Defendant, he led them on a high speed automobile chase, at speeds as high as 117 miles per hour. Officers had to use brake sticks to end the chase, but then Defendant took off on foot to avoid arrest. When finally apprehended, officers observed that Defendant appeared to be under the influence of drugs or alcohol. He also had a firearm in his possession. Defendant acknowledges there are pending outstanding warrants for his arrest in both Platte County, Missouri and Wyandotte County, Kansas.

The evidence against Defendant at the detention hearing was strong and compelling. The Court ordered Defendant detained, finding that he was both a flight risk and a danger to the community. The facts surrounding Defendant's arrest (leading law enforcement on a high speed chase, while allegedly under the influence of drugs or alcohol and in possession of a firearm, all in violation of his conditions of release) are especially troubling. They show Defendant's dangerous and extreme attempts to evade law enforcement and a reckless disregard for the safety of others. If released, Defendant would pose a serious threat to the safety of the community. This factor weighs heavily against Defendant's request for temporary release.

### B. The Specificity of Defendant's Stated COVID-19 Concerns

The Defendant expresses concerns that he "will be particularly vulnerable 'when and not if' COVID-19 comes to the LDC" because of injuries he sustained during a shooting in November 2019 (ECF No. 182 at 5). He claims at that time he suffered atelectasis (complete or partial collapse of his right lung), his spleen was removed (which filters blood as part of a person's immune system), he suffered pneumothorax (collapse of his left lung), and he either had pneumonia or had symptoms consistent with pneumonia. *Id*. Defendant claims he is a vulnerable person based on both his weakened immune system and the damage to his lungs. But he bases his claim of vulnerability to COVID-19 upon the statements of an expert witness in a

Washington case, with no apparent connection to Defendant or awareness of Defendant's medical condition. *Id*. And there is no indication that Defendant is currently ill from the health problems he describes resulting from his November 2019 wounds, or that the LDC is unable to care for him. Thus, Defendant has failed to demonstrate specific current health concerns that make him more at risk to contract the disease than the general population.

Defendant also argues that he is at greater risk of contracting COVID-19 because of the lack of social distancing at the LDC, that facility's alleged operational problems, and alleged failure to take appropriate steps to prevent the occurrence of COVID-19 inside the facility. As for his argument that conditions at the LDC place him at risk for contracting the virus, the Court notes that many of Defendant's complaints are based upon a 2017 audit of the U.S. Marshal Service's contract for operating the LDC and the complaints noted may no longer be at issue. The Court finds more reliable the current information regarding CoreCivic's efforts to manage COVID-19 and protections being taken at its facilities, available at:

https://www.corecivic.com/hubfs/_files/CoreCivic%20Response%20to%20COVID-1.pdf. (see also *Clark, supra* at 10-11, discussion regarding recent precautions taken by CoreCivic in light of COVID-19). The Defendant does not indicate that he is aware of any known cases of COVID-19 at the LDC. Instead, he argues an outbreak is inevitable. But this argument is purely speculative.

On balance, this factor is neutral.  It would be mere speculation to attempt to predict whether Defendant would be safer in terms of his overall COVID-19 risks in custody at the LDC or temporarily released to in-home detention (presuming he would stay there).

### C.  Extent to Which the Proposed Release Plan is Tailored to Mitigate or Exacerbate the Defendant's Overall COVID-19 Risks

The Defendant requests temporary release subject to conditions of home detention with GPS monitoring, supervision by the U.S. Probation Office, and that he not possess a firearm or

other dangerous weapon. He does not specify the location of his proposed "home" or whether other persons reside at the residence. This causes the Court concerns that Defendant's proposed home detention plan might expose him to COVID-19 risks from other individuals at the residence. In addition, Defendant's release plan would necessarily require contact with Pretrial Services, which would further expose Defendant to risks of contracting the virus. Moreover, given Defendant's failure and refusal to abide by conditions of release imposed by the Court in the past, as evidenced by his recent apparent violations, the Court has no confidence that Defendant would remain at home while on temporary release. If released on home detention, he would therefore likely be exposed to COVID-19 in the general population, placing him at greater risk than at the LCD where there are at this time no reported cases of COVID-19. This factor weighs against Defendant's request for temporary release.

### D. Likelihood Defendant's Proposed Release Plan Would Increase COVID-19 Risks to Others

As should be clear from the discussion in the preceding section, the undersigned Magistrate Judge has grave concerns that Defendant's proposed release plan would significantly increase the risk of contracting COVID-19 to others. Again, based upon Defendant's past conduct, the Court has no confidence that Defendant would abide by the plan, stay at home, refrain from possessing a firearm or other weapon, and not violate any local, state or federal law. "A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties, pretrial services officers who come into contact with the defendant for supervision, and others if that individual is taken back into custody." *Clark,* at *14. These risks are exacerbated in this case given the outstanding warrants for Defendant's arrest in Platte County,

Missouri and Wyandotte County, Kansas. This factor also weighs against Defendant's request for temporary release.

**Conclusion**

The Court finds the four-factor analysis discussed above weighs heavily against Defendant's request for temporary release. The Court therefore finds that Defendant's Emergency Motion for Immediate Release should be denied.

**IT IS THEREFORE ORDERED** that the Emergency Motion for Immediate Release filed by Defendant Brent Brown (ECF No. 182) is **DENIED.**

Dated this 31st day of March, 2020, at Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge